# United States Court of Appeals
### For the Eighth Circuit

_____

No. 21-2410
_____

United States of America

*Plaintiff - Appellee*

v.

Dakota Siller

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville
_____

Submitted: April 11, 2022
Filed: April 27, 2022
_____

Before LOKEN, ARNOLD, and KOBES, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Dakota Siller pleaded guilty to conspiring to launder money for a drug trafficking ring, *see* 18 U.S.C. § 1956(a)(1)(B)(i), (h), the district court, in calculating Siller's recommended sentencing range, found that Siller was responsible for more than five hundred grams of drugs. Siller challenges that determination on appeal and says that his recommended sentencing range was too high as a result of the court's

error. We agree with Siller that the court's calculation cannot stand, and so we reverse and remand.

There are two factual components to the court's calculation. The first involves an intercepted phone call between Siller and a leader of the conspiracy named Nathan Martin, during which he directed Siller to move three-quarters of a pound (or about 340 grams) of methamphetamine into a safe. The calculation's second component involved four separate wire transfers of one thousand dollars each that Siller says he sent to drug suppliers. To determine how much methamphetamine four thousand dollars would buy, the court had to calculate the drug's price. The presentence investigation report said that the price was two thousand dollars per pound, which meant that Siller was responsible for an additional two pounds of methamphetamine, or roughly 907 grams. When the amounts from both components are added together, that would mean that Siller was responsible for about 1,247 grams.

Siller objected to the PSR's calculation. As to the first component of the calculation, Siller argued that "the facts contained in the PSR are insufficient to demonstrate that the amount alleged even existed, let alone that [he] did, indeed, engage in any actions related thereto." As to the second component, Siller challenged the price of methamphetamine that the PSR recommended. He explained that the evidence showed a price of $4,800 to $6,400 per pound, meaning that he was responsible for only about 378 grams at most.

Siller reiterated these arguments at the sentencing hearing, but as to the part of the calculation involving the intercepted phone call, he added a double-counting argument: He said that "if three-quarters of a pound existed, it could be three-quarters of a pound that he's already being held accountable for for that $4,000." The district court found that Siller was accountable for the 340 grams involved in the intercepted phone call. It rejected Siller's contention that the government failed to prove the drugs referenced in that call actually existed and that Siller was responsible for them, but

it did not address Siller's contention that these drugs might be among the drugs that his wire transfers paid for.

The court then turned to Siller's objection to the price of methamphetamine. It recognized that it need not resolve the objection about pricing because, even if Siller's price range were correct, his Guidelines range would not change. Here's why: The Guidelines provide that Siller's base offense level would be 30 if he were deemed responsible for at least 500 grams but less than 1500 grams of methamphetamine. *See* USSG § 2D1.1(c)(5). After finding Siller responsible for the amount involved in the intercepted phone call (340 grams), the court had to determine the additional amount that the wire transfers made Siller responsible for. Based on the price of methamphetamine, Siller argued he was responsible for an additional 378 grams at most, rather than 907 additional grams. But either number, when added to 340 grams, brought Siller within the range corresponding to a base offense level of 30 because the sum of each is between 500 and 1500 grams (718 grams and 1,247 grams). Siller's Guidelines range was 100–125 months' imprisonment, but had the court found that Siller was responsible for only 378 grams, then the range would have been 84–105 months. The court ultimately sentenced Siller to 84 months in prison. Though Siller's sentence falls within the lower range that he argues for, the record does not show that the court would have imposed the same sentence regardless of its drug-quantity calculation, and so we decline to hold that any error was harmless. *See, e.g.*, *United States v. Harris*, 908 F.3d 1151, 1156 (8th Cir. 2018); *see also Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016).

We review drug-quantity findings for clear error. *United States v. McArthur*, 11 F.4th 655, 659 (8th Cir. 2021) (per curiam). The "government bears the burden of proving drug quantity by a preponderance of the evidence." *Id.*

Siller's arguments on appeal replicate those he made before the district court. We do not take issue with the district court's rejection of Siller's argument that the

intercepted phone call doesn't prove that the drugs actually existed or that Siller handled them as directed. But Siller's argument about potential double counting is another matter. He maintains that the drugs involved in the intercepted phone call "could quite possibly be the very same drugs that Mr. Siller is already being held accountable for in wiring money to Martin's buyers," and the circumstances make it "plausible that the .75 pounds . . . was purchased with the $4,000.00 that Mr. Siller wire transferred." As we said, the district court did not resolve this contention, nor does the government on appeal respond to or otherwise take issue with it. We observe that the timing of events supports the conclusion that some of the drugs may have been counted twice. Since it was the government's burden to demonstrate drug quantity by a preponderance of the evidence, we do not think Siller's sentence can stand on this record.

Nor do we think that Siller forfeited his double-counting argument by raising it for the first time at the sentencing hearing. For one thing, the government doesn't argue that he raised the issue too late, so it has forfeited any forfeiture argument it could have made. *See Calzone v. Summers*, 942 F.3d 415, 422 (8th Cir. 2019) (en banc). For another, though a party generally must raise objections to a PSR before the sentencing hearing, *see United States v. May*, 413 F.3d 841, 849 (8th Cir. 2005); *see also* Fed. R. Crim. P. 32(f)(1), Siller did in fact timely challenge the inclusion of the drugs from the intercepted phone call in his drug-quantity calculation, arguing all along that the evidence as presented in the PSR was insufficient to trigger the enhancement. He simply advanced his double-counting argument at sentencing to support that more general objection.

We therefore vacate the district court's judgment and remand for resentencing. We leave it to the district court in the first instance to decide whether resentencing should take place on the existing record, *see United States v. Berrier*, 28 F.4th 883, 888 (8th Cir. 2022), and to resolve Siller's objection concerning the price of methamphetamine, if necessary.

_____